## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

ANTHONY BOULLOSA,
an individual,

                                         Case No.:

      Plaintiff,

v.

EQUIFAX INFORMATION
SERVICES LLC,
a foreign limited liability company,

      Defendant.

_____/

## COMPLAINT

**COMES NOW**, Plaintiff, ANTHONY BOULLOSA (hereinafter, "Plaintiff"), by and through the undersigned counsel, and hereby files this Complaint against Defendant, EQUIFAX INFORMATION SERVICES LLC (hereinafter, "Equifax" or "Defendant").  In support thereof, Plaintiff states:

## PRELIMINARY STATEMENT

1.    This is an action for damages for Equifax's violations of the FCRA wherein Equifax failed to refer Plaintiff's dispute regarding identity theft and fraud to each of the other consumer reporting agencies after receiving multiple disputes from Plaintiff and wherein Equifax failed to block information identified in Plaintiff's Equifax credit reports resulting from identity theft within four (4) business days of receiving disputes from Plaintiff that properly identified Plaintiff, included an identity theft report filed with a law enforcement agency, identified the information resulting

1

from identity theft and fraud, and asserted that Plaintiff did not initiate or authorize the transactions resulting in the information reported by Equifax.

## JURISDICTION, VENUE & PARTIES

2.     Jurisdiction of this Court arises under 28 United States Code, Section 1331 and the FCRA, 15 United States Code Section 1681, *et seq*.

3.     Defendant is subject to the jurisdiction of this Court as Defendant regularly transacts business in this District.

4.     Venue is proper in this District as the acts and transactions described herein occur in this District.

5.     At all material times herein, Plaintiff is a natural person residing in Hillsborough County, Florida.

6.     At all material times herein, Equifax is a foreign limited liability company existing under the laws of the state of Georgia, with its principal place of business located at 1550 W Peachtree Street, Atlanta, Georgia 30309.

## FCRA STATUTORY STRUCTURE

7.     Congress enacted the FCRA requiring consumer reporting agencies to adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information.  *See* 15 United States Code, Section 1681b.

8.     Under the FCRA, whenever a consumer reporting agency prepares a consumer report, it shall follow reasonable procedures to assure *maximum possible*

*accuracy* of the information concerning the individual about whom the report relates. *Id.* at § e(b) (emphasis added).

9.     Under the FCRA, upon the direct request of a consumer, or an individual acting on behalf of or as a personal representative of a consumer, who asserts in good faith a suspicion that the consumer has been or is about to become a victim of fraud or related crime, including identity theft, a consumer reporting agency that maintains a file on the consumer and has received appropriate proof of the identity of the requester, shall include a fraud alert in the consumer's credit file and shall refer the information regarding the consumer's fraud dispute to each of the other consumer reporting agencies. 15 U.S.C. § 1681c-1.

10.     Additionally, under the FCRA, a consumer reporting agency must block information in a consumer's credit file that was identified by a consumer as information resulting from an alleged identity theft within four (4) business days after receiving: (i) appropriate proof of the consumer's identity; (ii) a copy of an identity theft report; (iii) identification from the consumer of the information that resulted from identity theft and fraud; and (iv) a statement by the consumer that the disputed information is not information relating to any transaction by the consumer.  15 U.S.C. § 1681c-2.

11.     Under the FCRA, any person who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer: in an amount equal to the sum of any actual damages sustained by the consumer as a result of the failure; for statutory damages of not less than $100 and not

more than $1,000; for such amount of punitive damages as the court may allow; and for the costs of the action together with reasonable attorneys' fees. *Id.* at § n.

12.    Under the FCRA, any person who is negligent in failing to comply with any requirement imposed with respect to any consumer is liable to that consumer in an amount equal to the sum of any actual damages sustained by the consumer as a result of the failure and the costs of the action together with reasonable attorneys' fees. *Id.* at § o.

## GENERAL ALLEGATIONS

13.    At all material times herein, Plaintiff is an alleged "consumer" or "debtor" as defined by the FCRA, Section 1681a(c) because he is an individual and allegedly obligated to pay a debt.

14.    At all material times herein, Plaintiff established a personal credit card account with Wells Fargo, a Wells Fargo Visa Signature Card, identified by account numbers ending in -0471, -4961 and/or -5785 (hereinafter, "Credit Card Account").

15.    At all material times herein, Wells Fargo attempts to collect information concerning an alleged balance owed on the Credit Card Account resulting from an unauthorized cash advance transfer (hereinafter, the "Alleged Debt").

16.    At all material times herein, Wells Fargo furnishes information to Equifax—and Equifax report the same—regarding Plaintiff's Credit Card Account and the corresponding Alleged Debt referenced by account number beginning in 44- (hereinafter, "Tradeline Account").

17.    At all material times herein, Plaintiff established a personal checking

account with Wells Fargo identified by a checking account number ending in -4095 (hereinafter, "Checking Account").

18.     At all material times herein, Plaintiff did not initiate or authorize any transactions creating the Alleged Debt, Plaintiff did not authorize any individual or entity to initiate any transactions in his name creating the Alleged Debt, Plaintiff did not use the balance transferred from his Credit Card Account to his Checking Account in any manner, and Plaintiff did not receive the benefit of any good or services as a result of any transactions made creating the Alleged Debt.

19.     At all material times herein, Equifax is a "consumer reporting agency" as defined in 15 United States Code, Section 1681a(f) of the FCRA and Equifax regularly engages in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing consumer reports. Equifax disburses such consumer reports to third parties under contract for monetary compensation.

20.     At all material times herein, Defendant act itself or through its agents, employees, officers, members, directors, successors, assigns, principals, trustees, sureties, subrogees, representatives, third-party vendors, and insurers.

21.     All necessary conditions precedent to the filing of this action occurred, or Defendant waived or excused the same.

## FACTUAL ALLEGATIONS

## CREATION OF THE ALLEGED DEBT

22.     Prior to June 2021, Plaintiff opened a Checking Account and Credit Card

5

Account with Wells Fargo.

23.     On or about June 11, 2021, an unknown third party made at least two (2) fraudulent charges through Plaintiff's Wells Fargo Checking Account totaling $74.50 without Plaintiff's consent, either using Plaintiff's Checking Account information or a cloned copy of Plaintiff's debit card associated with his Wells Fargo Checking Account.

24.     On or about June 12, 2021, Plaintiff received *at least* seven (7) phone calls from Wells Fargo requesting authorization for a $5,000.00 cash advance transfer from his Credit Card Account to his Checking Account.

25.     In response, Plaintiff advised Wells Fargo that he did not initiate the transaction, instructed Wells Fargo to stop the transfers, advised Wells Fargo the attempted transfer must be an act of identity theft and/or fraud.

26.     On or about June 12, 2021, despite Wells Fargo contacting Plaintiff and Plaintiff advising Wells Fargo he did not initiate the cash advance transfer, Wells Fargo transferred $5,000.00 to Plaintiff's Checking Account as a cash advance from his Credit Card Account.  Please see attached a true and correct copy of Plaintiff's monthly billing statement for his Credit Card Account for June 2021 labeled as **Exhibit "A"** showing the $5,000.00 transfer from Plaintiff's Credit Card Account posted on June 12, 2021.  Please also see attached a true and correct copy of Plaintiff's monthly account statement for his Checking Account for June 2021 labeled as **Exhibit "B."**

27.     Additionally, on or about June 12, 2021, an unknown third party made at least seven (7) fraudulent charges through Plaintiff's Wells Fargo Checking Account

totaling $4,286.58 without Plaintiff's consent, either using Plaintiff's Checking Account information or a cloned copy of Plaintiff's debit card associated with his Wells Fargo Checking Account. *See* Ex. B at p. 3.

28.     On or about June 12, 2021, Plaintiff made at least ten (10) telephone calls to Wells Fargo in an attempt to reverse any fraudulent activity and prevent any ongoing fraudulent activity on his Checking Account and Credit Card Account. During such calls, Plaintiff advised that he did not authorize the transactions and such transactions must be the result of identity theft and fraud.

29.     Next, on or about June 13, 2021, an unknown third party made at least two (2) fraudulent charges through Plaintiff's Wells Fargo Checking Account totaling $720.77 without Plaintiff's consent, either using Plaintiff's Checking Account information or a cloned copy of Plaintiff's debit card associated with his Wells Fargo Checking Account. *Id*.

30.     The above referenced fraudulent cash transfer to Plaintiff's Checking Account posted to Plaintiff's Checking Account on June 14, 2021 and the eleven (11) fraudulent charges made using Plaintiff's Checking Account information posted to Plaintiff's Checking Account on June 14, 2021. *Id*.

31.     Importantly, from June 7, 2021 to June 18, 2021, Plaintiff—a Hillsborough County, Florida resident—was physically located in the Miami, Florida area for business purposes and stayed at a hotel in Miami, Florida.

32.     Although Plaintiff was physically located in Miami, Florida between June 7, 2021 and June 18, 2021, the unknown third-party made *at least* eleven (11)

fraudulent charges at locations in Virginia, Maryland, and Washington D.C. between June 11, 2021 and June 13, 2021, and as a result, $5,508.81 was withdrawn from Plaintiff's Wells Fargo Checking Account on or about June 14, 2021.  *See* Ex. B. at p. 3.

33.     Additionally, Plaintiff's Checking Account balance was overdrawn as a result of the fraudulent transactions posted to his Checking Account on June 14, 2021.

34.     Plaintiff did not and could not have made the eleven (11) charges on June 14, 2021 totaling $5,508.81 in Virginia, Maryland, and Washington D.C. because he was physically located in Miami, Florida on the dates of such charges.

## PLAINTIFF'S DISPUTES TO DEFENDANT PURSUANT TO THE FCRA, DEFENDANT'S FAILURE TO BLOCK THE DISPUTED INFORMATION, AND DEFENDANT'S FAILURE TO REFER PLAINTIFF'S FRAUD DISPUTE

35.     On or about August 14, 2021, after Plaintiff learned of the identity theft and fraud that occurred in June 2021, Plaintiff worked with the Tampa, Florida Police Department and filed a police report affirming that Plaintiff was the victim of identity theft and fraud.

36.     On or about October 28, 2021, the Tampa Police Department concluded its investigation and finalized a police report.  Please see attached a true and correct copy of the final police report labeled as **Exhibit "C."**

37.     Importantly, the police report concluded:

I was able to search and locate physical locations for the following **fraudulent transactions**:

Shoppers 2635- 806 Largo Center Dr, Largo, MD 20774

Walgreens #19336- 9810 Apollo Dr, Largo, MD 20774
Apple Store R516 (Carnegie Library)- 801 K St NW, Washington, DC 20001
Macy's Bowie Town- 15300 Emerald Way, Bowie, MD 20716

Due to the **fraudulent charges** occurring in Largo, MD, Washington DC, and Bowie, MD, this case will be reclassified as an Assist Other Jurisdiction and forwarded to the Bowie Police Department, Washington DC Metro Police, and Prince George County Police Department for further investigation.

*See* Ex. C at p. 21 (emphasis added).

38.     In January and February 2022, Plaintiff obtained copies of his consumer disclosure reports from Equifax.  Please see attached true and correct copies of relevant pages from said reports labeled as **Exhibit "D."**

39.     Despite Plaintiff's repeated disputes to Wells Fargo regarding the fraudulent Credit Card Account cash advance transaction, Wells Fargo and Equifax reported Plaintiff's Wells Fargo Credit Card Account (i.e., the Tradeline Account) as owed by Plaintiff personally with a balance due in the amount of $5,218.00 and a $190.00 balance past-due as of January 2022.  *See* Ex. D at pp. 4-7, 9-10, and 15-17.

40.     Defendants' reporting of the Tradeline Account with a balance due or past-due in excess of $0.00 as of January 2022 is inaccurate because any alleged balance owed was the result of identity theft and fraud.

41.     Additionally, Wells Fargo and Equifax reported the Tradeline Account as late and/or past-due for the months of August 2021, September 2021, and/or January 2022. *Id*.

42.     Defendant's reporting of historical or current late payment information following the June 2021 fraudulent charge is similarly inaccurate because any alleged

balance owed was the result of identity theft and fraud, and therefore, Plaintiff could not be late or past-due on a balance he does not owe.

43.     In January 2022, Plaintiff sent a letter to Defendant disputing Defendant's ongoing reporting of the Wells Fargo Tradeline Account with a balance owed and any derogatory late payment information in or after June 2021 (hereinafter, "First Dispute").   Plaintiff enclosed a copy of the police report, Plaintiff's divers license, and social security card copies in support of his First Dispute.   Please see attached true and correct copies of the First Dispute letter to Equifax labeled as **Exhibit "E."**

44.     More specifically, Plaintiff's First Tradeline Dispute advised Equifax that the Wells Fargo Tradeline Account balance was created a result of identity theft and fraud, provided information related to the police report Plaintiff filed, and requested that Defendant update the Tradeline Account to reflect a zero-dollar balance with no late payment information, or delete the Tradeline Account if it cannot be verified. *Id.*

45.     Equifax received Plaintiff's First Dispute.

46.     Equifax failed to delete or block the information disputed by Plaintiff within four (4) business days of Equifax receiving Plaintiff's First Dispute.

47.     Equifax failed to include a fraud alert in Plaintiff's credit file after receiving Plaintiff's First Dispute.

48.     Equifax failed to refer Plaintiff's identity theft and fraud dispute to any other credit reporting agency, including Experian and Trans Union.

49.     On or about February 12, 2022, Equifax sent a letter to Plaintiff in

response to his First Dispute.  Please see attached true and correct copies of relevant pages from said letter labeled as **Exhibit "F."**

50.    Despite Equifax clearly receiving Plaintiff's dispute which advised that the Alleged Debt owed on the Tradeline Account was created as a result of identity theft and fraud, Equifax's immediately-aforementioned letter asserted that Equifax conducted an investigation and the information was "verified as accurate."  Equifax continued to report the Tradeline Account on Plaintiff's Equifax report and in his credit files with inaccurate balance and late-payment information, specifically, an inaccurate balance due, balance past-due, and as 60-80 days late.  *See* Ex. F at pp. 3-4.

51.    On or about March 23, 2022, Plaintiff retained undersigned counsel, Swift Law PLLC, as legal counsel with respect to Defendant's erroneous reporting of the Tradeline Account on Plaintiff's credit reports and in his credit files.

52.    On or about May 2, 2022, Plaintiff sent a second letter to Equifax, with the assistance of his attorneys, *again* disputing Defendant's reporting of the Tradeline Account (hereinafter, "Second Dispute").  Plaintiff enclosed copies of the relevant Tampa Police reports, Plaintiff's affidavit submitted under penalty of perjury, and a copy of a dispute Plaintiff filed with the CFPB in support of his Second Dispute.  Please see attached true and correct copies of the Second Dispute and its enclosures labeled as Composite **Exhibit "G."**

53.    Specifically, Plaintiff's Second Dispute *again* advised Equifax that the Tradeline Account balance was a result of identity theft and fraud, provided information related to the police report Plaintiff filed, and requested that Defendant

11

update the Tradeline Account to reflect a zero-dollar balance with no late payment information or delete the Tradeline Account if it cannot be verified. *Id.*

54.    Equifax received Plaintiff's Second Dispute.

55.    Yet again, failed to delete or block the information disputed by Plaintiff within four (4) business days of Equifax receiving Plaintiff's Second Dispute.

56.    Also, yet again, Equifax failed to include a fraud alert in Plaintiff's credit file after receiving Plaintiff's Second Dispute.

57.    Similarly, yet again, Equifax failed to refer Plaintiff's identity theft and fraud dispute to any other credit reporting agency, including Experian and Trans Union.

58.    On or about May 14, 2022, Equifax sent a letter to Plaintiff advising that Equifax would not block or delete the information disputed by Plaintiff but would communicate Plaintiff's dispute to Wells Fargo as part of its review of Plaintiff's Second Dispute.  Please see attached true and correct copies of relevant pages from said letter labeled as **Exhibit "H."**

59.    On or about May 28, 2022, Equifax sent another letter to Plaintiff in response to his Second Dispute. Please see attached true and correct copies of relevant pages from said letter labeled as **Exhibit "I."**

60.    Despite Equifax clearly receiving Plaintiff's Second Dispute which advised that the Alleged Debt owed on the Tradeline Account was created as a result of identity theft and fraud, Equifax's immediately-aforementioned letter asserted that Equifax conducted an investigation and the information was "verified as accurate."

Equifax continued to report the Tradeline Account on Plaintiff's Equifax report and in his credit files with inaccurate balance and late-payment information, specifically, an inaccurate balance due, balance past-due, and missed payment information.  *See* Ex. I at pp. 3-4.

61.     On or about June 28, 2022, Plaintiff sent a third letter to Equifax, with the assistance of his attorneys, *again* disputing Defendant's reporting of the Wells Fargo credit card account (hereinafter, "Third Dispute").  Plaintiff again enclosed police reports, affidavits, and previous disputes in support of his Third Dispute.  Please see attached true and correct copies of the Third Dispute and its enclosures labeled as Composite **Exhibit "J."**

62.     Also, in support of his Third Dispute, Plaintiff provided a breakdown of the fraudulent charges made through his Wells Fargo Checking Account in June 2021 in Maryland, Virginia, and Washington, D.C., and provided numerous documents showing that Plaintiff was physically located in Miami, Florida when the subsequent fraudulent charges occurred, including but not limited to a written statement from Plaintiff's employer confirming Plaintiff's physical location on the dates when the physical charges occurred.

63.     Plaintiff's Third Dispute advised Defendant that Plaintiff could not possibly have authorized the initial cash advance transfer and did not benefit from the charges in any way, and therefore, requested that Defendant update its reporting of the Tradeline Account to reflect a zero-dollar balance due and no adverse or derogatory late payment information.

64.     Equifax received Plaintiff's Third Tradeline Dispute.

65.     Yet again, failed to delete or block the information disputed by Plaintiff within four (4) business days of Equifax receiving Plaintiff's Third Dispute.

66.     Also, yet again, Equifax failed to include a fraud alert in Plaintiff's credit file after receiving Plaintiff's Second Dispute.

67.     Similarly, yet again, Equifax failed to refer Plaintiff's identity theft and fraud dispute to any other credit reporting agency, including Experian and Trans Union.

68.     Notably, Plaintiff sent a copy of his Third Dispute to Trans Union in addition to Equifax.

69.     Subsequently, on or about July 22, 2022, Trans Union sent a letter to Plaintiff in response to his Third Tradeline Dispute wherein Trans Union advised it deleted its reporting of the Wells Fargo credit card account.  Please see attached a true and correct copy of said letter labeled as **Exhibit "K."**

70.     Although Trans Union deleted its reporting of the Tradeline Account in response to Plaintiff's Third Dispute, Equifax sent a letter to Plaintiff in response to his Third Dispute, dated July 8, 2022, wherein Equifax continued reporting the Tradeline Account with an inaccurate balance due and past-due in excess of $5,000.00. Please see attached a true and correct copy of Equifax's response to the Third Tradeline Dispute labeled as **Exhibit "L."**

71.     Equifax also sent a separate letter to Plaintiff following his Third Tradeline Dispute advising that Equifax would not further investigate Plaintiff's

disputes.

## DAMAGES

72.     As a result of Defendant's reporting of the Tradeline Account, Plaintiff further dealt with the stress and anxiety of feeling hopeless, believing that he would be denied credit as a result of the erroneous and incorrect reporting of the Tradeline Account reflecting the Alleged Debt asserted as owed by Wells Fargo if he needed to obtain credit in the near future, and that Plaintiff would either be denied credit or pay higher interest rates in the event he could obtain financing.

73.     As a result of Defendant's conduct, actions, and inactions, Plaintiff was deterred from making credit applications as he believed he would not be able to obtain favorable credit terms as a result of Defendant's derogatory and continued reporting of the Tradeline Account with a balance past-due, he did not wish to further damage his credit score with futile credit inquires, and he was continually evaluated for credit using consumer reports that reported the Tradeline Account with late payment information resulting in the Tradeline Account being reported as a derogatory, negative, or adverse account.

74.     Most importantly, Plaintiff was deterred from applying for a mortgage loan to purchase a home jointly with his wife.

75.     Additionally, Plaintiff was denied credit following credit applications and received other adverse action notices affecting his credit worthiness.

76.     For example, on or about September 30, 2021, Wells Fargo sent Plaintiff a letter, notifying him of Wells Fargo's decision to lower Plaintiff's credit limit on the

15

Credit Card Account from $12,000.00 to $5,850.00, citing recent delinquency, cash advances, and balances owed as the cause. Please see attached a true and correct copy of said letter lowering credit limit labeled as **Exhibit "M."**

77.     Additionally, Chase Bank denied Plaintiff's application for a credit card in January 2023.

78.     Overall, Plaintiff suffered damage to his reputation as a result of Defendant's conduct.

79.     Further, as a result of Defendant's actions, Plaintiff suffered emotional distress, anxiety, inconvenience, frustration, annoyance, fear, and confusion, believing that despite Plaintiff's exhaustive efforts to convey to Defendant that he did not initiate or authorize the cash advance including supplying Defendant with supporting documentation, Plaintiff must simply endure Defendant's reporting of the Tradeline Account.

80.     Plaintiff retained Swift, Isringhaus, Dubbeld & McEleney, PLLC for the purpose of pursuing this matter against Defendant, and Plaintiff is obligated to pay his attorneys a reasonable fee for their services.

**COUNT ONE:**
**FAIR CREDIT REPORTING ACT –**
**VIOLATION OF 15 UNITED STATES CODE, SECTIONS 1681c-1**

Plaintiff re-alleges paragraphs one (1) through eighty-nine (89) as if fully restated herein and further states as follows:

81.     Defendant is subject to, violated the provisions of, 15 United States Code, Sections: 1681c-1 by: (i) failing to include a fraud alert in Plaintiff's Equifax credit file

16

after receiving Plaintiff's repeated disputes; and (ii) failing to refer the information regarding Plaintiff's fraud disputes to each of the other consumer reporting agencies.

82.     Defendant willfully and/or negligently failed to include a fraud alert in Plaintiff's Equifax credit file after receiving Plaintiff's repeated disputes.

83.     More specifically, Equifax received Plaintiff's First Dispute, Second Dispute, and Third Dispute, each of which asserted in good faith that Plaintiff was the victim of fraud and a related crime, including identity theft.

84.     Notably, Tampa, Florida Police Department's police reports specifically identified Plaintiff as the victim of identity theft and fraud.

85.     Despite receiving such information through Plaintiff's three (3) disputes, each time, Defendant failed to include a fraud alert on Plaintiff's Equifax credit reports and in Plaintiff's Equifax credit file.

86.     Furthermore, Defendant willfully and/or negligently failed to refer the information regarding Plaintiff's fraud disputes to each of the other consumer reporting agencies.

87.     Despite receiving Plaintiff's three (3) written disputes, each of which asserted in good faith that Plaintiff was the victim of fraud and a related crime, including identity theft, Equifax did not refer Plaintiff's disputes to any other consumer reporting agencies, including Experian and Trans Union.

88.     As a result of Equifax's conduct, actions, and inactions, Plaintiff suffered damage to his credit reputation and credit worthiness, was denied credit, was deterred from making credit applications as he believed he would not be able to obtain favorable

credit terms as a result of Defendant's derogatory and continued reporting of the Tradeline Account, did not wish to further damage his credit score with futile credit inquires, and he was continually evaluated for credit using consumer reports that reported the Tradeline Account with late payment information resulting in the Tradeline Account being reported as a derogatory, negative, or adverse tradeline account.

89.     Equifax's actions were a direct and proximate cause of, as well as a substantial factor in, the serious injuries, damages, and harm to Plaintiff as stated herein.

90.     Equifax's violations of 15 United States Code Section 1681c-1, constitute negligent or willful noncompliance—or both—with the FCRA, and entitle Plaintiff to actual damages, statutory damages, punitive damages, as well as attorneys' fees and costs as enumerated in 15 United States Code, Sections 1681n, or 1681o, or both.

**COUNT TWO:**
**FAIR CREDIT REPORTING ACT –**
**VIOLATION OF 15 UNITED STATES CODE, SECTIONS 1681c-2**

Plaintiff re-alleges paragraphs one (1) through eighty-six (86) as if fully restated herein and further states as follows:

91.     Defendant is subject to, violated the provisions of, 15 United States Code, Section 1681c-2 by failing to block information in Plaintiff's Equifax credit file that was identified by Plaintiff as information that resulted from an alleged identity theft within four (4) business days after receiving: (i) appropriate proof of Plaintiff's identity; (ii) a copy of an identity theft report; (iii) Plaintiff's identification of the information

18

that resulted from identity theft and fraud; and (iv) a statement by Plaintiff that the disputed information is not information relating to any transaction by Plaintiff.

92.    Defendant willfully and/or negligently failed to block or delete information disputed by Plaintiff resulting from identity theft and fraud.

93.    Specifically, through Plaintiff's repeated disputes, Plaintiff provided Equifax with information sufficient for Equifax to corroborate Plaintiff's identity, such as his name, date of birth, full social security number, and current address.

94.    Also, through Plaintiff's repeated disputes, Plaintiff provided Equifax with copies of police reports from the Tampa, Florida Police Department, an affidavit signed by Plaintiff, and an identity theft report Plaintiff filed with the CFPB, and each report asserted that Plaintiff was the victim of identity theft and fraud.

95.    Further, Plaintiff's repeated written disputes clearly advised Equifax that the derogatory information reported by Equifax and Wells Fargo on the Tradeline Account purely resulted from identity theft and fraud.

96.    Moreover, Plaintiff's repeated written disputes clearly advised Equifax that Plaintiff did not authorize the transactions creating the Alleged Debt and did not benefit from the transactions in any manner.

97.    Despite Plaintiff *repeatedly* advising Equifax that Plaintiff did not initiate the cash advance that created the Alleged Debt, did not authorize any other person to initiate the cash advance in his name or on his behalf, did not receive the benefit of any money, goods, or services obtained as a result of any transactions or charges made with the cash advance—and therefore, the Alleged Debt was a result of identity theft

and fraud—Equifax *repeatedly* failed to block the Tradeline Account information disputed by Plaintiff within four (4) business days of Equifax receiving Plaintiff's disputes.

98.     Instead, Equifax continued to report the Alleged Debt with a balance due, with a balance past-due, and as charged off resulting in the Account being reported as a derogatory, negative, or adverse account in Plaintiff's credit reports and credit files.

99.     Notably, Plaintiff sent a copy of his Third Dispute to Trans Union in addition to Equifax.

100.    Subsequently, on or about July 22, 2022, Trans Union sent a letter to Plaintiff in response to his Third Tradeline Dispute wherein Trans Union advised it deleted its reporting of the Wells Fargo Tradeline Account.

101.    As a result of Equifax's conduct, actions, and inactions, Plaintiff suffered damage to his credit reputation and credit worthiness, was denied credit, was deterred from making credit applications as he believed he would not be able to obtain favorable credit terms as a result of Defendant's derogatory and continued reporting of the Tradeline Account, did not wish to further damage his credit score with futile credit inquires, and he was continually evaluated for credit using consumer reports that reported the Tradeline Account with late payment information resulting in the Tradeline Account being reported as a derogatory, negative, or adverse tradeline account.

102.    Equifax's actions were a direct and proximate cause of, as well as a

substantial factor in, the serious injuries, damages, and harm to Plaintiff as stated herein.

103.    Equifax's violations of 15 United States Code Section 1681c-2, constitute negligent or willful noncompliance—or both—with the FCRA, and entitle Plaintiff to actual damages, statutory damages, punitive damages, as well as attorneys' fees and costs as enumerated in 15 United States Code, Sections 1681n, or 1681o, or both.

## PRAYER FOR RELIEF

**WHEREFORE**, as a direct and proximate result of Defendant's conduct, Plaintiff respectfully requests an entry of:

a.    Judgment against Defendant for maximum statutory damages for violations of the FCRA;

b.    Actual damages in an amount to be determined at trial;

c.    Compensatory damages in an amount to be determined at trial;

d.    Punitive damages in an amount to be determined at trial;

e.    An award of attorney's fees and costs; and

f.    Any other such relief the Court may deem proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues triable by right.

## SPOLIATION NOTICE AND DEMAND TO RETAIN EVIDENCE

Plaintiff hereby gives notice to Defendant and demands that Defendant and its affiliates safeguard all relevant evidence—paper, electronic documents, or data—

pertaining to this litigation as required by law.

Respectfully submitted,

**SWIFT LAW PLLC**

/s/ *Aaron M. Swift*

**Aaron M. Swift, Esq., FBN 0093088**
Jordan T. Isringhaus, Esq., FBN 91487
Jon P. Dubbeld, Esq., FBN 105869
Sean E. McEleney, Esq., FBN 125561
8380 Bay Pines Blvd.
St. Petersburg, FL 33709
Phone: (727) 300-1929
Fax: (727) 255-5332
aswift@swift-law.com
jisringhaus@swift-law.com
jdubbeld@swift-law.com
smceleney@swift-law.com
jmurphy@swift-law.com
*Counsel for Plaintiff*